# CHARLESTON.

## LINZY PALMER v. EVERETT E. MAGERS.

Submitted January 20, 1920.   Decided January 27, 1920.

1. CONTINUANCE—*Motion Based on Absence of Witness in Distant County Only Summoned a Week Before Trial Properly Refused.*

    A motion for a continuance based upon the absence of a witness for whom process went to a distant county, only about a week before the date fixed for the trial, and without information to the officer, so far as the record shows, as to the place of residence or abode of the witness in such county, and unaccompanied by any showing of probability of procurement of his attendance at the next term of the court, may be properly overruled. (p. 417).

2. TRIAL—*Instructions Ignoring One of Two Theories Supported by Evidence in Boundary Line Control Are Erroneous.*

    On the trial of an issue as to the location of a boundary line, instructions based upon only one of two theories of location, both of which are supported by some evidence in the case, and wholly ignoring the other, are erroneous and justify the award of a new trial, they being the only instruction given. (p. 420).

3. SAME—*Instructions Based on Part of Evidence Only Gives Undue Prominence to Evidence.*

    An instruction founded upon only a part of the conflicting evidence in a case and ignoring the residue thereof, given in

the absence of any others founded upon such residue, unduly emphasizes the evidence on which it rests and is erroneous for that reason.   (p. 420).

4.   FORCIBLE ENTRY AND DETAINER—*Refusal of Instruction as to
· Law of Peaceable Entry Erroneous in Boundary Case Notwithstanding Absence of Evidence of Forcible Entry.*

On the trial of an action of unlawful detainer, the right in which is dependent upon the true location of a disputed boundary line, the refusal of an instruction requested by the defendant and enunciating the law of peaceable entry upon disputed premises, under a claim of right, is erroneous, even though there is a lack of evidence of forcible entry in the case.   (p. 422).

5.   TRIAL—*Instructions as to Immaterial Facts Incidentally Revealed on Trial Properly Refused.*

A trial court may properly refuse instructions based upon immaterial and non-probative facts incidentally revealed on the trial of an issue.   (p. 422).

6.   BOUNDARIES—*Instruction That Agreement as Disputed Boundaries Was Entered Into Under Mistake May Properly be Given.*

On an issue as to the establishment of a disputed line by agreement, the court may properly instruct the jury that the agreement is not binding, if entered into under a mistake, in the absence of proof of conduct making it absolute and conclusive, and should do so upon a proper request.   (p. 422).

7.   TRIAL—*Instructions Limiting Issues to Evidence Are Proper.*

When one party to a trial improperly predicates his case upon only a part of the evidence, the other may properly request instructions not ignoring any evidence favorable to his antagonist, but limited to the issue he has tendered, and, if requested, they should be given.   (p. 422).   . ·

8.   NEW TRIAL—*Motion to Set Aside Verdict Based on Preponderance of Evidence Against it Should be Sustained.*

A motion to set aside a verdict, based upon clear and decided weight and preponderance of the evidence against it, should be sustained.   (p. 422).

9.   BOUNDARIES—*Controlling Effect of Fixed Terminus of Boundary Line Stated.*

If one terminus of a disputed boundary line called for in a deed, is clearly fixed and rendered certain by evidence and the other unidentified and uncertain and a line run from such fixed corner agres 'perfectly with the calls of the deed for course

and distance, the former governs and controls the location of the other and the distance called for in another line running to it. (p. 422).

Error to Circuit Court, Marshall County.

Suit by Linzy Palmer against Everett E. Magers. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*J. Howard Holt,* for plaintiff in error.
*D. B. Evans* and *Martin Brown,* for defendant in error.

POFFENBARGER, JUDGE:

The first complaint on this writ of error to a judgment for the plaintiff, in an action of unlawful detainer, is based on the overruling of a motion for a continuance. The affidavit fails to show requisite diligence. The case was set for trial and tried in Marshall county, October 17, 1918, and the process for the witness was sent to Kanawha county October 11, 1918, and came back with a return of "not found" endorsed thereon. The meagerness of time allowed may have prevented diligent search for the witness, and the affidavit fails to show that the writ was accompanied by information to the officer, as to the residence or location of the witness in Kanawha county, which might have enabled him to serve the subpoena. Three or four days is a very short period in which to locate a stranger in a large and populous county. A serious effort to obtain the attendance of the witness under such circumstances, would have necessitated ascertainment of his place of residence and warning to him of intention to require his attendance. *Wytheville Ins. & B. Co.,* v. *Teiger,* 90 Va. 277, 283; *R. & M. Railroad Co.* v. *Humphreys,* 90 Va. 425. Another fatal defect in the case made for a continuance was failure to prove attendance of the absent witness at the next term could probably be secured, or his deposition taken. Since an allowance of a continuance on account of the absence of a witness whose evidence can never be obtained would be useless and idle, this fact should always be shown in support of the motion. *Phillips* v. *Com.,* 90 Va. 401; *State* v. *Brown,* 62 W. Va. 546.

The land in controversy has an area of not more than two acres and the controversy turns on the location of a division

line.  The parties derived their titles from a common source, their farms having once constituted a larger one owned by Miles Bonar, and containing 354 acres, as surveyed by W. V. Hukill, in March, 1902.  By deed dated, October 17, 1904, Bonar conveyed it to W. B. Hicks, who had a division line run through it, by S. Howe Bonar, an engineer, cutting it into two parts containing, respectively, as estimated by the surveyor, 159.8 acres and 196.5 acres, for conveyances to two or more persons named Woodruff.  By a deed dated, April 1, 1905, Hicks conveyed the larger part to Elias B. Woodruff, who conveyed it to the plaintiff, by a deed dated, June 21, 1906.  Hicks conveyed the other part to Elias B. and Silas H. Woodruff, by a deed dated, April 1, 1905, and they reconveyed it to him in 1906. By a deed dated September 4, 1907, he conveyed it to Everett E. Magers, the defendant.

The original Bonar tract was very irregular in form and the division line has two angles in it breaking it into three parts. Treated as a whole, it begins on the S. L. Johnson line which is also the Southeast line of the Bonar tract and runs across to the boundary line between the Bonar tract and the M. B. Pierce farm.  The controversy involves only the location of the northern end of the division line running from the second angle to the Pierce line, a distance of 800 or 900 feet.  The monument at that angle, called for by the deed, is "a stake near a large sassafras," and its location is the principal bone of contention.  As claimed by the plaintiff, it stood about 70 feet northwest of the sassafras, and, as claimed by the defendant, not over six feet northwest thereof.

Plaintiff predicates his case largely upon his deed, the relation in point of time between his deed and that of the defendant and the testimony of the surveyor, Bonar.  His deed antedates that of the defendant and the latter calls for a stake in the Pierce line as the "corner to Linzy Palmer," and his line runs thence "with Palmer's line S. 3-30, W. 13.76 chains to a stake near a large sassafras," the call in that deed for the distance between the monument last mentioned and the one at the other angle in the division line, a stake and large stone, 15.12 chains, going about 70 feet northwest of the large sassafras tree.  Bonar swears he established the corner at that point.  He also says

he was directed to run the line so as to put 200 acres in the larger or eastern portion and that he ran a trial line which placed the stake 5½ feet from said tree and then, by final survey, moved it 66 feet farther toward the northwest and removed the last line that distance in that direction, to enable him to change his first line, the one running from the Johnson line, some distance in the opposite direction, in order to leave a desirable building site in the smaller tract, and at the same time, leave the areas of the two parcels nearly the same as they were fixed by the trial survey. His trial line began in the Johnson line west of a lynn tree and ran into the tract to be divided and his final or established line began at the lynn tree. On his trial measurements, he had entered in his note book a stake "near a large sassafras" and, when he ran his final line going farther beyond the tree, he altered the distance, about one chain, but neglected to erase the words "near a large sassafras." If the tree is not the monument called for at that point, none has been found. None of the witnesses ever saw any stake at the tree or within 100 feet of it, between the dates of the survey and the trial.

The defendant relies upon a slight deficiency in the quantity of his tract of land; a corresponding excess in that of the plaintiff; evidence of discrepancies and errors in measurements; failure of the surveys to close with the distances called for in the deeds; lack of agreement of the terminus of the line run from the location of the stake, as fixed by Bonar's evidence, with the description thereof given in the two deeds, saying it is "a stake in run line of M. B. Pierce," 1.57 chains from a certain angle in it on one side and 1.56 chains from another angle in it on the other side; calls and measurements on the Pierce line showing that terminus to be at a point in that line from which a line run on the course and for the distance, specified in the deed, would stop at a point within five or six feet of the sassafras; and evidence tending to contradict Bonar's testimony to the effect that he ran the division line twice and that he merely calculated and did not actually measure the line from the stake near the sassafras to the Pierce line, which is 104 feet too short, as he located it, and about right in length, as the defendant locates it, the deed calling for 908.16 feet and the line measured

on his location being only 804½ feet. S. H. Woodruff says he knows nothing of any such change of the survey as Bonar mentions nor any provision for a building site, but he was not on the ground during the entire period of the survey. He says he was told 200 acres could not be put into the larger part without the making of bad lines, and that he replied that he and his brother could adjust that. J. L. Bonar swears the last part of the line was actually measured and that it ran from the sassafras tree to the Pierce line. S. Howe Bonar admits the Pierce line terminus of the disputed line, as claimed by the defendant, falls into the Pierce line agreeably to the description thereof in the deeds and that, as claimed by the plaintiff and located by him, it does not, and also that the Pierce line cannot be run so as to make it do so. He attributes the discrepancies to alleged errors in the Hukill survey of the entire tract, the calls and measurements of which he had not verified at the date of his running of the division line.

By instruction No. 6 given for the plaintiff, the trial court seems to have virtually told the jury that, if the distance between the stake and stone at the first angle and the stake at the second, called for in the deeds, went about 70 feet beyond the sassafras tree, they should find that the line runs from that point to the Pierce line. It does not mention nor take any notice of the evidence tending so strongly to fix the other terminus of that part of the division line. The substance of it reads as follows: "If the jury believe from the evidence that Surveyor Bonar finally located the stake corner below the large sassafras 66 feet from the stake as originally set near the large sassafras and located the division line finally from the stake set 66 feet below the stake originally set near the sassafras, running from the stake 66 feet from the stake set North 3 deg. 30 min. East 13.76 chains to a stake in run line of M. B. Pierce, and that the plaintiff's deed carries his line as so established by Surveyor Bonar, then they should find that the division line in question so runs from the stake 66 feet below the stake originally set by Bonar near the large sassafras to the Pierce line in the run." This direction necessarily modifies plaintiff's instruction No. 4, submitting the locaton of the line to the jury in general terms. These are the only instructions

the court gave, that bear upon the location of the disputed line. The defendant requested the court to give seven instructions tendered by him, all of which were refused. Manifestly the instructions given attach too much importance to the testimony of S. Howe Bonar and the fact that the defendant's deed calls for the corners defined by the plaintiff's deed, the latter being prior in date. If it called for existing and identified monuments different from those contended for by the defendant, they would control. *Lewis* v. *Yates,* 72 W. Va. 841, 845. But both deeds call for the same monuments and, in the case of the one at the second angle of the line, it has not been found and the evidence conflicts as to its location. In other words, the evidence of a trial line fixing the corner at the tree, and a final line fixing it beyond the tree is substantially contradicted, and the location of that monument has not been definitely and certainly established. On the other hand, the call for the other end of the line is pretty definitely fixed by the Pierce line as found by the surveyors, whether Mr. Bonar intended to fix it at that point or not. His intention cannot alter the effect of the terms of the deeds, calling for a point other than the one he actually intended to adopt, if such is the case. As described and defined by the deeds, its identity and place upon the ground are made certain and clear by indisputable evidence. The deeds say it is about midway between two angles of the Pierce line and the witnesses have found and identified that point beyond dispute. Being called for by both deeds, it is necessarily fixed for both parties, even though the calls may have been inserted as they were by mistake. That corner taken in connection with the described course and distance of the line fixes the other corner agreeably to the contention of the defendant. A point very near the tree, within three or four feet of it, makes the disputed line correspond with the calls of the deeds exactly, as to both course and distance and the Pierce line corner. That corner has the same dignity in law as the other would have if it were definitely located. Obviously, therefore, said instruction No. 6 given for the plaintiff unduly narrowed the scope of the inquiry. It told the jury to inquire only as to the location of the stake by Mr. Bonar. If that point could be incontrovertibly fixed, it would not be conclusive. If

what he did upon the ground was not put into the deeds, it would not control. But it was not so fixed and there was very potent evidence tending to prove he did not fix it at the point at which he claims to have fixed it. The inconsistent, ascertained corner in the Pierce line should not have been ignored by the instructions. *Webb* v. *Big Kanawha Packet Co.,* 43 W. Va. 800; *Wooddell* v. *W. Va. Imp. Co.,* 38 W. Va. 23.

Defendant's instruction No. 1, propounding the law of peaceable entry of an owner upon his own land, should have been given. There was no controversy about the character of the defendant's entry upon the disputed land. It was peaceable within the meaning of the law, but its character was made hypothetical in the instruction. Defendant had clear right to have the jury advised as to its character and effect, as a means of voidance of confusion.

His instruction No. 2, appliable to the law of adverse possession, was properly refused, there being no such issue. His instructions Nos. 3 and 4, narrowing the issue to calls for a stake at the second angle, describing it as being within three or four feet of the tree and introducing the element of possession as evidence, would have been misleading, wherefore they were properly refused. His instruction No. 5, correctly enunciating the law of agreement upon a line under mistake, was improperly refused. His instruction No. 6, telling the jury neither party could go beyond the stake called for in the deeds, if they should find it had stood within three or four feet of the tree, although the distance called for might place it farther away, was rather narrow in its scope, but it did not ignore any theory relied upon by the plaintiff and sustained by evidence. Read in connection with his instruction No. 7, stating the converse of the proposition hypothetically and telling the jury they should find for the defendant, if the plaintiff had not proved by a preponderance of the evidence the stake had stood 66 feet beyond the tree, it directly responded to the narrow issue improperly chosen by the plaintiff. By these two instructions, the defendant offered the plaintiff battle upon ground of the latter's own choice, but the court thwarted his purpose by refusal of the instructions. Both should have been given.

In view of the weighty and decided preponderance of the

evidence in favor of the defendant, the motion to set aside the verdict should have been sustained.   One of the two corners involved in the controversy was indubitably fixed and rendered certain by evidence, while the location of the other was doubtful and uncertain.   The fixed corner and the course and distance called for and perfectly agreeing with it necessarily resolved the doubt as to the location of the other as determined by the deeds which take precedence over the call for mere distance in the second part of the division line and the oral testimony of the surveyor.   *Lewis* v. *Yates,* 62 W. Va. 575; *Casto* v. *Baker,* 59 W. Va. 683; *Gwynn* v. *Schwartz,* 32 W. Va. 487.   It is to be remembered the calls are for a point in the Pierce line, not in the Hukill survey thereof, which is mentioned only in connection with the quantity of land.   The conflict in the calls for distance, as to the second and third parts of the line, is clearly resolved by the fixed Pierce line corner and the course and distance of the line back from that point.   That fixed corner controls the call for distance in the description of the second part of the line, wherefore the case falls clearly within the well settled rule.

For the errors noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed   and   remanded.*