# CHARLESTON.

T. H. CANNADY *v.* JOHN CHESTONIA

(No. 6284)

Submitted October 23, 1928. Decided October 30, 1928.

*Samuel Solins,* for plaintiff in error.

WOODS, JUDGE:

This action, which originated before a justice of the peace of McDowell county, was brought by a life insurance agent for the recovery of money due on contract, and is based on the second renewal of a ninety day note, taken by him in payment of the first year's premium on a $5,000.00 life insurance policy secured for defendant. An appeal was allowed the defendant, and on trial in the circuit court of said county the jury found for the defendant, and the court entered an order dismissing plaintiff's case.

On the trial in the circuit court the defendant entered two oral pleas, namely, that he did not owe the debt, and *non est factum.* Objection was made to the filing of the latter plea on the ground that the same must be in writing and verified by affidavit. Chapter 125, section 40, Code, is relied on. This and the contention that the evidence does not support the verdict incorporate the principal grounds of error stressed in this Court.

Formal pleadings in actions before justices are abolished by section 50, Chapter 50, Code. It is therein provided that pleadings may be oral or in writing. In the case under consideration the docket of the justice showed that the defendant confessed judgment. Under Chapter 50, Code, an appeal from the judgment of a justice is a continuation of the action brought before the justice, and is tried *de novo,* and new evidence and new and amended pleadings may be allowed. *Bratt* v. *Marum,* 24 W. Va. 655. The pleadings on appeal need not be in writing. *Poole* v. *Dilworth,* 26 W. Va. 583. It is expressly provided by statute that the pleadings may be amended in the circuit court in an action taken to such court by an appeal from a justice. But can new pleadings be filed in the circuit court, when none were filed before the justice, as here  If the summons may be treated as a complaint, and it seems this may be done, any new and proper pleading should be permitted to be filed in the circuit court and may be treated as amendments to the pleadings. Hogg's Pleadings & Forms, sec. 667 b.

Since the pleadings may be oral, the defendant was within his rights in pleading orally, in addition to the general issue, the plea of *non est factum,* i. e., that he did not sign nor authorize any person to sign the note sued on. The statute, Chapter 125, section 40, Code, providing that, where a declaration or other pleading alleges that any person made, or accepted, any writing, no proof of the handwriting of such person should be required, unless the fact be denied by an affidavit with a plea which puts it in issue, has no application to civil actions before justices of the peace. At common law, a denial of the execution of the instrument by defendant by an appropriate plea need not be under oath. 8 C. J. 943. As our statute providing for vertification of such pleas is limited in its application to actions having their origin in *nisi prius* courts, it follows that the common law rule would obtain here. Looking into the evidence we find that the real defense sought to be set up under the plea is an alleged fraud, in this, that the defendant's signature was obtained to a note under the imposition that it was a release of the insurance. So, if a man be imposed upon, and signs one paper while he

believes he is signing another, he can not be said to have assented, and may show this on a plea of *non est factum*. *Van Valkenburgh* v. *Rouk,* 12 Johns. (N. Y.) 337; *Dorr* v. *Munsell,* 13 Johns. (N. Y.) 431; *Taylor* v. *King,* 6 Munf. 358. In this case the burden is cast upon the defendant to prove his defense.

Does the evidence support the verdict? When asked for payment of the money advanced by the plaintiff in payment of the insurance premium, defendant states that he told plaintiff that he did not have money to pay the same and further that he did not want the insurance; that the plaintiff at that time represented that he would take away the insurance if he (defendant) would sign a paper, which he did. If the defendant had signed the note sued on under such misapprehension of the true effect of the paper, this might have been a good defense. But such does not appear to be the case. The first note for $240.40 was given February 1, 1924, payable in ninety days; the other note introduced in evidence, the one sued on, was given August 27, 1924, payable in one hundred twenty days after date. Both defendant and his one supporting witness, placed the time at which he signed the alleged release about May 1, 1924. This was evidently at the time that a note was given in renewal of the original note. As to the first note, the defendant claimed he merely signed an application paper for insurance; but on being confronted with the note to which his name was signed by him in the Polish language, he admitted that he did sign it.

The following facts stand out in the evidence as uncontroverted: The delivery to the defendant of the policy of insurance for which premium the original note was given; that upon the delivery of the policy, payment to the insurance company for one year's premium was made by the plaintiff's agent; that the defendant retained this policy during that period, thereby having the protection afforded by its terms, and thereafter burnt it; that he executed the note sued on; that he confessed judgment before the justice of the peace. It is true that he attempts to controvert this confession of judgment. The following extract from his testimony will show that in reality the debt was not even denied: "Q. Didn't you confess judgment in the squire's court?

A. I told the squire I no can pay. Q. Didn't you tell the squire that you owed the money and could not pay it? A. I told him that I have no money, I can't pay it. Q. Didn't you tell him that you owed the money and could not pay it? Didn't you tell him that? A. (No answer). Q. Didn't you tell him that? A. He asked me what you go to do? I said I have no money to pay it. That is what I told him." Viewing this testimony most benignly to the defendant, it amounted to a judgment by default. Whatever effect might be given his attempted defense, the defendant subsequently executed the note sued on here. This action, unexplained, nullified such defense; for, assuming that said transaction did take place, the fact that defendant later signed another note is evidence of his intention to hold on to the policy and not rescind the insurance contract. This was a note given in renewal of the original.

While this Court does not attempt to pass upon the credibility of witnesses, the testimony to sustain a verdict must be credible, reasonable, and consistent with probabilities, and with the circumstances proven by uncontradicted testimony. The testimony of a party as witness in his own behalf is construed most strongly against him where it is doubtful, vague or contradictory. A party to a suit is not entitled to a finding in his favor if a version of his testimony most favorable to him shows that the verdict should be against him. Loath as we are to disturb the verdict of a jury, we are nevertheless bound by the long established and well settled rule of this Court, that, in actions at law, a verdict of a jury which is without sufficient evidence to support it, or plainly against the decided weight and preponderance of conflicting evidence, should, upon proper motion, be set aside and a new trial awarded. *Coalmer* v. *Barrett,* 61 W. Va. 237; *Distilling Co.* v. *Bauer,* 56 W. Va. 249; *Palmer* v. *Magers,* 85 W. Va. 415; *Griffith* v. *American Coal Company,* 78 W. Va. 34. In this case the verdict is clearly inconsistent with all the controlling facts.

For the foregoing reason, the judgment must be reversed and a new trial awarded the plaintiff.

*Reversed; verdict set aside;*
*new trial awarded.*