KAP-TEX, INC.

*v.*

LACY ROMANS AND PAUL C. TRILLI, *Partners,*
DOING BUSINESS AS BLUEFIELD SPORTSWEAR

(No. 10391)

Submitted September 11, 1951. Decided December 4, 1951.

*A. J. Lübliner, Roscoe H. Pendleton,* for plaintiff in error.

*Arthur F. Kingdon,* for defendant in error.

HAYMOND, JUDGE:

In September, 1949, the plaintiff, Kap-Tex, Inc., instituted this action of detinue in the Circuit Court of Mercer County, to recover from the defendants, Lacy Romans and Paul C. Trilli, partners trading as Bluefield Sportswear, the possession of certain articles of personal property consisting of sewing machines and attachable equipment of the alleged value of $2,500.00 delivered to the defendants in May of that year. To the declaration of the plaintiff, the defendants filed their plea of non detinet and an additional special plea. In their special plea the defendants claim from the plaintiff the unpaid sum of $250.00 for work, labor, and rental on, and upkeep, maintenance, and storage of, the property described in the declaration and the additional unpaid sum of $1,045.06, for labor performed, in part by the use of the property, in making certain articles of wearing apparel for the benefit of the plaintiff at its instance and request. The two claims for money due and owing from the plaintiff, set forth in the special plea, aggregate $1,295.06, and the defendants assert a lien upon the property and the right to retain possession of it until the total amount of their claims is paid by the plaintiff. Upon the trial of the case, on January 3, 1950, the jury returned a verdict for the defendants, which the trial court, on motion of the plaintiff, set aside on August 18, 1950. To the order set-

ting aside the verdict and awarding the plaintiff a new trial this Court granted this writ of error upon the petition of the defendants.

The principal questions presented are questions of fact and their proper determination depends upon the nature of certain transactions, during the period from April or May, 1949, until the institution of this litigation, between Paul C. Trilli, acting in behalf of the defendants and Morris Kaplan, and the capacity in which Kaplan acted, whether for Kap-Tex, Inc., Pace Setter Fashions, Inc., or himself, in those transactions.

Kaplan, a resident of New York City, is the president of, and a director and the principal stockholder in, the plaintiff, Kap-Tex, Inc., a New York corporation which was chartered by that State on December 16, 1946. He is also the president of another New York corporation known as Pace Setter Fashions, Inc., which was chartered by that State on February 28, 1949. In addition he owns and operates a business which manufactures aprons for men and women. Kap-Tex, Inc., engages in the business of manufacturing aprons, diapers, bloomers and quilt covers, and Pace Setter Fashions, Inc., engages in the business of manufacturing dresses. Each corporation has separate books and bank accounts and has different stockholders, but both of them and Kaplan operated from and used the same office at Nos. 113 to 119, Prince Street, in New York City, from which place numerous letters on separate stationery of Kap-Tex, Inc., Pace Setter Fashions, Inc., and Morris Kaplan, bearing the signature of Kaplan, were sent from time to time to the defendants as Bluefield Sportswear at Bluefield, West Virginia, where the defendants, since March 7, 1949, have been engaged in the business of manufacturing garments, chiefly dresses, by putting together material which has been cut according to pattern into the different parts required to complete various articles of wearing apparel.

Sometime prior to February 25, 1949, the defendant, Trilli, being desirous of obtaining material to be used in the business of the partnership, upon receipt of a letter

from a man named Arnold, who appears to have been connected with Pace Setter Fashions, Inc., and with Kaplan, went to New York and there met Arnold who introduced him to Kaplan. As a result of Trilli's visit a contract was entered into between Trilli for the partnership and Pace Setter Fashions, Inc., by which the defendants received various deliveries of material from Pace Setter Fashions, Inc., at different times from February 25, 1949, until June 1, 1949, which appears to be the date of the last delivery of materials by Pace Setter Fashions, Inc. In each instance, shipments of the materials were confirmed by letters addressed to Bluefield Sportswear, written on stationery of Pace Setter Fashions, Inc., or Morris Kaplan, and signed by Kaplan or by Arnold. Part payments were made for the work performed by the defendants in making various garments for Pace Setter Fashions, Inc., by its checks which were signed by Kaplan, who was also its treasurer. As already pointed out the defendants claim that a balance of $1,045.06 is due, unpaid and owing to them and they filed an itemized statement of this account against Pace Setter Fashions, Inc., showing the separate charges and the various credits given Pace Setter Fashions, Inc., as an exhibit with the testimony of the defendant Trilli.

During the course of these transactions and while the defendants were performing the work under the contract, Pace Setter Fashions, Inc., complained to the defendants that it was not receiving the completed garments in sufficient quantities in time to enable it to fulfill its commitments to its customers. With respect to this complaint Trilli contended that the delay was due to the action of Pace Setter Fashions, Inc., in sending as many as fifteen different styles of garments for manufacture instead of the two styles called for by the contract and that the defendants could not profitably adapt their work to so many different types. As a result of these differences, Trilli, at the request of Kaplan, met him at his office in New York sometime prior to May 2, 1949. At that meeting, according to the testimony of Trilli, the principal witness for the defendants, Kaplan told him that

the trouble resulted because Trilli did not have the proper machinery; that Kaplan had machinery which he was not using; that he would show it to him; that Trilli told Kaplan that Trilli did not have any money to buy any machinery; that Kaplan replied that he would sell it to Trilli so cheaply that he would not know he was buying it; that Kaplan would deduct from fifty to sixty dollars each week from Trilli's bills for labor; that Trilli replied: "Well, it's all right. It looks pretty good."; and that Kaplan said: "All right, I'll pack them up right away and send them to you." Trilli also testified that no price was then mentioned; that at that time he had never heard of a company called Kap-Tex, Inc.; that Kaplan was the only person he talked with about the machines; and that Kaplan, the same man he dealt with for the material, shipped him the machines and the equipment.

After this meeting between Trilli and Kaplan, the six machines and the equipment involved in this action, were shipped from 115 Prince Street, New York City, to Bluefield Sportswear, at Bluefield, by Smith Transfer under three separate bills of lading, copies of which were introduced in evidence with the testimony of Morris Kaplan which was taken by deposition and filed and read in behalf of the plaintiff. These bills of lading bear the respective dates of May 2, May 4, and May 6, 1949, and show that the property described in each, consisting of sewing machines and equipment, was received from Kap-Tex, Inc., by Smith Transfer, as carrier, consigned to Bluefield Sportswear at Bluefield, West Virginia.

The plaintiff introduced in evidence as an exhibit with the deposition of Kaplan a letter dated May 6, 1949, written on stationery of Kap-Tex, Inc., addressed to Bluefield Sportswear, 2900 Bluefield Avenue, Bluefield, West Virginia, signed by Morris Kaplan, in connection with the sale and the shipment of the machines. The body of this letter, the receipt of which is admitted by Trilli, is in these words: "We have sent you via Smiths Transfer 6 sewing machines and five stands and motors, one

stand and motor still coming to you. It is agreed that all six machines together with the six stands and motors remain our property until you have paid $2500.00 for them, the money to be paid a little at a time by being deducted from labor bills. We have also sent you one case of parts and accessories." On May 6, 1949, a bill for the property shipped, bearing that date, written on Kap-Tex, Inc., stationery and addressed to Bluefield Sports- wear, was sent from New York to Bluefield Sportswear, at Bluefield, West Virginia. This account described the property and stated that "These machines remain property of Kap-Tex, Inc. until fully paid for by Bluefield Sportswear."

Concerning the conversation between Kaplan and Trilli in Kaplan's office in New York relative to the machines, Kaplan testified that Trilli told him that he could perform the work he was doing for Pace Setter Fashions, Inc., more quickly if he had additional machinery, and asked Kaplan if he would sell him certain machinery; that Kaplan said he would if Trilli would pay for it and that until the machines were paid for they would be the property of Kap-Tex, Inc., the owner of the machines; that Trilli asked him the price of the machines and Kaplan informed Trilli that he would "have to pick them out with me"; that they then "picked out" the machines; that Kaplan told Trilli that the price was $2,500.00; that Trilli said he did not have the money but that he would arrange with Pace Setter Fashions, Inc., for whom he was doing work, for it to pay certain sums, which were to be agreed upon, on the account for the machines. Kaplan also testified that Kap-Tex, Inc., referred to the labor bills which would be due from Pace Setter Fashions, Inc., because Kaplan was president of both corporations.

After the last delivery of material by Pace Setter Fashions, Inc., to the defendants, on June 1, 1949, the defendants, on June 10, 1949, returned, by Smith Transfer at a transportation cost of $172.06 which was paid by Pace Setter Fashions, Inc., all the unused material that had been sent to them by Pace Setter Fashions, Inc., and the

defendants refused to do any further work for Pace Setter Fashions, Inc., under the contract. By letter dated June 10, 1949, addressed to Pace Setter Fashions, Inc., 115 Prince Street, New York, New York, signed Bluefield Sportswear, by Paul Trilli, Trilli informed Pace Setter Fashions, Inc., that he was sorry "the work has to be returned unmade for the simple reason is that 90% of my employees have left me so it does not pay for me to run the plant with two or three girls, hoping there are no hard feelings between us for it is just one of those things that happen to the best of men, I'll be sending everything back with the exception of the machines, please advise what arrangements can be made with the machinery in order to save *dismandling* and repacking of the machinery and handling of freight charges, hoping to hear from you soon." Kaplan testified that upon receipt of the foregoing letter he called Trilli by telephone and requested him to return the machines immediately to Kap-Tex, Inc.; that Trilli said that he would return the machines only if he were paid $1,045.06 which he claimed was due from Pace Setter Fashions, Inc.; that Kaplan told Trilli that the machines belonged to Kap-Tex, Inc.; that Kap-Tex, Inc., had nothing to do with Pace Setter Fashions, Inc.; that the work Trilli had received was from Pace Setter Fashions, Inc.; that all payments that had been made for the work were made by Pace Setter Fashions, Inc., and not by Kap-Tex, Inc.; and that Trilli told Kaplan that he was still using the machines and that it would be "a little while" before he could send them back. On this point, Trilli testified that, in the telephone conversation between him and Kaplan, Kaplan told him "All I want is my machinery back."; that Trilli said "Morris, you owe me money."; that Kaplan said: "I refuse to pay you."; and that Trilli said: "Well, I'll hold the machines." Trilli also testified, with respect to the same conversation, that Kaplan asked him "What are you going to do about the machines?"; that Trilli said: "Mr. Kaplan, you know you owe me money,"; that Kaplan said: "I don't owe you any money."; that Trilli said: "I have been working for Pace Setter

all the while."; and that Kaplan then said: "I'll tell you what I'll do. You send me a five hundred dollar certified check tomorrow, and ten days after that send me another five hundred dollar check, and I'll let you have the machinery for two thousand dollars and I'll square off with Pace Setter." Trilli further testified that after the machines were received by the defendants they incurred some expense of about $200.00 for wiring and for labor in setting up the machines and in keeping them in working order; and that the defendants used the machines for about twelve days and then quit using them because of the differences between him and Kaplan with regard to the material. Trilli, in his testimony, admitted that the defendants still kept the machines and he stated that as they remained in the place of business of the defendants and occupied usable space, the defendants claimed the sum of $250.00 for rental and storage of the machinery.

Upon the trial Kaplan was the only witness who testified in behalf of the plaintiff and Trilli and his partner, Romans, were the only witnesses who testified in behalf of the defendants. The entire evidence consisted of the testimony of these witnesses and numerous exhibits consisting of letters and other writings which were filed as exhibits with the testimony of the different witnesses.

The foregoing recital sets forth the substance of the material facts as they appear from the evidence in the case.

By their assignments of error the defendants seek reversal of the order of the circuit court setting aside the verdict of the jury on substantially these grounds: (1) the order setting aside the verdict is contrary to both the law and the evidence; (2) the defendants have a lien upon the property and are entitled to retain possession of it to secure the amount owing to them for labor performed under their contract; (3) the evidence shows that Kaplan mislead the defendants and caused them to believe that they were dealing with him and Pace Setter Fashions, Inc., instead of the plaintiff; and (4)

the plaintiff is bound by the misrepresentation and the conduct of Kaplan and is estopped to assert any claim against the defendants until the amount owing to the defendants is paid.

The defendants contend that the evidence shows that the plaintiff, Kap-Tex, Inc., and Pace Setter Fashions, Inc., and Kaplan, are one and the same person; that if they are not the same person, the defendants, in obtaining the machinery in the negotiations concerning it between Trilli and Kaplan, were lead to believe, and did believe, that they obtained it from Pace Setter Fashions, Inc., for which they were performing work under the contract between Pace Setter Fashions, Inc., and the defendants; and that, as Pace Setter Fashions, Inc., owes the defendants $1,045.06 for labor performed and $250.00 for their services in using and keeping the machines, they have a lien upon the machines for their entire claim of $1,295.06 and are entitled to the possession of the machines until the claim is paid.

It is clear that this position of the defendants is not sustained by the evidence. Though it appears that Kaplan as president of both Kap-Tex, Inc., and Pace Setter Fashions, Inc., controlled the operation of the business and the affairs of each, and used the same office at 113 to 119 Prince Street, in New York City, to conduct his own business and that of both corporations, the evidence clearly establishes that Kap-Tex, Inc., and Pace Setter Fashions, Inc., were separate and distinct corporations and that Kap-Tex, Inc., had been chartered as a corporation before the defendants entered into any contract with Pace Setter Fashions, Inc., which was chartered as a corporation within a few days after the start of the negotiations between Trilli and Kaplan which resulted in the contract.

Though Trilli may have thought that in purchasing the machines and the equipment he was buying them from either Kaplan or Pace Setter Fashions, Inc., and not from Kap-Tex, Inc., as indicated by his testimony, which is somewhat doubtful and is contrary to the pos-

itive testimony of Kaplan, the evidence is clear and undisputed that they were sold and shipped to the defendants by Kap-Tex, Inc. The letter dated May 6, 1949, from Kap-Tex, Inc., to Bluefield Sportswear, which Trilli admits he received, shows clearly that the transaction was a sale, not a bailment, of the property by Kap-Tex, Inc., and that the defendants, by the letter and the bill sent at the same time, were fully informed of that fact. In the face of the letter, the bill for the property, and the bills of lading, the defendants can not now say that they obtained the machines and the equipment from Pace Setter Fashions, Inc., or from Kaplan personally. The decided preponderance of the evidence shows that the transaction was a conditional sale by Kap-Tex, Inc., to the defendants, and that title to the property was retained by Kap-Tex, Inc., until the purchase price of $2,500.00 was paid by the defendants. It is also clear that no part of the purchase price was at any time paid by the defendants.

The evidence does not sustain, but in fact disproves, the claim of the defendants that the plaintiff is indebted to them in the amount of $1,045.06 for labor in making dresses or other garments or in the amount of $250.00 for services in keeping and caring for the property, aggregating the sum of $1,295.06, and that the defendants have a lien upon the property which entitles them to retain possession of it until payment of the debt as alleged in their special plea.

Though the defendants now insist that the plaintiff owes them $1,045.06 for labor performed, the undisputed evidence is that their labor in making the various completed articles of wearing apparel was performed for Pace Setter Fashions, Inc., under their contract with it and not for the plaintiff. The itemized statement of this portion of their claim, which was introduced in evidence with the testimony of Trilli, is charged, not against Kap-Tex, Inc., but against Pace Setter Fashions, Inc. Having assumed, and undertaken to maintain, that position the defendants can not seek to establish in this action the

same claim against the plaintiff. A party will not be permitted to assume inconsistent positions in the same suit, or series of suits, with respect to the same fact or state of facts. *Hinerman* v. *Marshall County Bank,* 134 W. Va. 533, 60 S. E. 2d 217; *Calhoun County Bank* v. *Ellison,* 133 W. Va. 9, 54 S. E. 2d 182; *Greenbrier Laundry Company* v. *Fidelity and Casualty Company of New York,* 116 W. Va. 88, 178 S. E. 631; *Central Trust Company* v. *Cook,* 111 W. Va. 637, 163 S. E. 60; *Ealy* v. *Shelter Ice Cream Company,* 110 W. Va. 502, 158 S. E. 781; *Clay County Bank* v. *Wilson,* 109 W. Va. 684, 158 S. E. 517; *MacDonald* v. *Long,* 100 W. Va. 551, 131 S. E. 252.

The evidence also refutes the claim of the defendants for the sum of $250.00. There is no proof that the defendants expended any specific or definite sum in keeping or caring for the property. The only testimony on that point is Trilli's statement that the cost of wiring and setting up the machines "and labor and everything and to keep up the machines" was "about two hundred dollars", and his statement that the claim for $250.00 was "for rental and storage of the machinery." As it clearly appears that the transaction involving the property was a conditional sale with title, until payment of the purchase price, in the plaintiff, as seller, and with possession in the defendants, as buyer, it was the duty of the defendants to take proper care of the property as long as the purchase price remained unpaid and, in the absence of any agreement permitting it, which nowhere appears in the evidence, the defendants could not charge the plaintiff for rent or storage of the machines or for assembling them for the purpose of enabling the defendants to devote them to the use for which they were purchased by the defendants. Though the common law gives to a mechanic, artisan, or other workman, a lien for labor performed or material furnished by him in manufacturing, repairing, or improving goods and chattels delivered to him for that purpose, which entitles him to retain possession of the property against the owner until the lien is discharged by payment, *Stallard* v. *Stepp,* 91 W. Va. 60, 112 S. E. 184; *Keystone Manufacturing Company* v.

*Close,* 81 W. Va. 205, 94 S. E. 132, 3 A. L. R. 857; *Caroway v. Cochran,* 71 W. Va. 698, 77 S. E. 278, the rule of those cases does not apply to the facts disclosed by the evidence in this case. Having failed to establish any lien in their favor upon the property of the plaintiff which entitles the defendants to retain it in their possession, they can not on that ground defeat the right of the plaintiff to the possession of the property sued for in this action.

The contention of the defendants that the plaintiff is bound by the misrepresentation and the conduct of Kaplan and is estopped from asserting any claim to the property against the defendants in this action is likewise not supported by the evidence. If, contrary to the positive testimony of Kaplan, Trilli, as he testified, was in fact led to believe that the property which he purchased for the partnership, was sold to the defendants by Kaplan as the representative of Pace Setter Fashions, Inc., because the negotiations for the transaction between him and Kaplan were conducted in the office of Pace Setter Fashions, Inc., and Kaplan, he was informed, when the property was delivered, that it was owned, sold, and shipped by Kap-Tex, Inc. Instead of complaining of this fact to Kaplan, or any one else, and refusing to accept it on the basis of the letter of May 6, 1949, from Kap-Tex, Inc., which stated the terms and the conditions of the sale, the defendants received and kept the property with knowledge of the contents of the letter until the differences arose between them and Pace Setter Fashions, Inc., relating to their prior contract under which the defendants performed the labor for which they file their account against Pace Setter Fashions, Inc. Or, if Trilli had any doubt as to the identity of the owner of the property at the time of the sale, whether it was Pace Setter Fashions, Inc., or Kaplan personally, he could and should have asked Kaplan to designate the owner when, according to Trilli's testimony, Kaplan told him that he, Kaplan, had the machines which he showed him in the next room, which both of them "picked out", and which Kaplan said could be paid for by deductions from the account of the defendants for labor performed by them for Pace Setter

Fashions, Inc., under the contract. If Trilli had then inquired of Kaplan about the identity of the owner of the property and had been told by Kaplan that Pace Setter Fashions, Inc., was the owner, and had purchased and received it for the defendants without being informed by the letter of May 6, 1949, that Kap-Tex, Inc., owned and sold it to the defendants, a situation different from that disclosed by the evidence would have resulted. Such conduct by Kaplan would have constituted fraud and misrepresentation and would have operated to estop the plaintiff from asserting its ownership of the property. The evidence, however, does not establish fraud or misrepresentation and presents no ground of estoppel against the plaintiff's claim as owner of the property sued for in this action.

When a verdict is without evidence to support it, or is plainly against the decided weight and preponderance of conflicting evidence, it will, on proper motion, be set aside by the court. *Chapman* v. *Liverpool Salt and Coal Company,* 57 W. Va. 395, 50 S. E. 601; *Coalmer* v. *Barrett,* 61 W. Va. 237, 56 S. E. 385; *Sims* v. *Carpenter, Frazier and Company,* 68 W. Va. 223, 69 S. E. 794; *Kelley* v. *Aetna Insurance Company,* 75 W. Va. 637, 84 S. E. 502; *Griffith* v. *American Coal Company,* 78 W. Va. 34, 88 S. E. 595; *Palmer* v. *Magers,* 85 W. Va. 415, 102 S. E. 100; *Cannady* v. *Chestonia,* 106 W. Va. 254, 145 S. E. 390. Though the testimony of Kaplan and Trilli is conflicting as to what was said and as to what occurred at their meeting in Kaplan's office at the time the sale of the property was negotiated, the letter of May 6, 1949, the bill for the property, and the bills of lading under which it was shipped to the defendants, plainly outweigh the evidence in behalf of the defendants on the important question of the nature of the transaction and the ownership of the property purchased by the defendants. In *Coalmer* v. *Barrett,* 61 W. Va. 237, 56 S. E. 385, in which an order of the trial court setting aside a verdict of a jury was affirmed, this Court held in point one of the syllabus: "In an action at law, a verdict of a jury which is without sufficient evidence to support it, or plainly against the decided weight

and preponderance of conflicting evidence, should upon proper motion be set aside and a new trial awarded." In the same case this Court also held, in point six of the syllabus, that "This Court will not reverse the action of the trial court in setting aside a verdict and awarding a new trial, unless such action is plainly erroneous."

The defendants objected and excepted to the action of the circuit court in giving Plaintiff's Instruction No. 2, and in refusing to give Defendant's Instructions Nos. 1 and 3. The instruction given at the instance of the plaintiff told the jury that the burden of proving their claim against the plaintiff rests upon the defendants and that unless the jury believed that the defendants had proved by a preponderance of the evidence that the plaintiff is indebted to the defendants and that they are entitled to hold the property on that account, the jury should return a verdict for the plaintiff. This instruction correctly states the law and the action of the trial court in giving it was proper. Defendant's Instruction No. 1, a peremptory instruction, would have directed the jury to return a verdict for the defendants. As the decided weight and preponderance of the evidence were in favor of the plaintiff, the instruction was properly refused. Defendant's Instruction No. 3, which would have told the jury that if the jury believed from the evidence that Kap-Tex, Inc., Pace Setter Fashions, Inc., and Morris Kaplan, "are all one and the same outfit", the defendants were entitled to retain the property mentioned in the evidence until they were paid for their work and labor, was not based upon the evidence and, for that reason, the action of the trial court in refusing the instruction was correct.

Though, as already indicated, there is a conflict in certain parts of the oral evidence, the verdict of the jury in favor of the defendants is plainly against the decided weight and preponderance of the conflicting evidence. For that reason the circuit court was justified in sustaining the motion of the plaintiff to set aside the verdict

and award the plaintiff a new trial; and the order of that court, which set aside the verdict and awarded the plaintiff a new trial, not being plainly erroneous but instead being clearly right, must be and it is affirmed.

*Affirmed.*